The Honorable Mark Riable State Representative 16611 Burlingame Road Little Rock, Arkansas 72211
Dear Representative Riable:
This is in response to your request for an opinion on the method of compensation of Dr. Joycelyn Elders, the Director of the Arkansas Department of Health and a faculty professor at the University of Arkansas for Medical Sciences ("UAMS"). Specifically, you indicate that it is your understanding that Dr. Elders receives a salary as the Director of the Health Department and also receives a salary from UAMS as a professor. You inquire as to whether this situation results in a violation of Arkansas law, and if so, whether the "taxpayers have a right to seek recovery of the monies unjustly paid."
I have enclosed, for your information, a copy of Op. Att'y Gen. No. 90-050, which addresses this question. That opinion outlines and discusses the legality and constitutionality of the method employed to compensate Dr. Elders for the 1988 and 1989 fiscal years. It is my understanding that the mechanism used to finance Dr. Elders salary for the present fiscal year is substantially similar to that described in Opinion No. 90-050, a mechanism which involves the use of a "professional services contract." The opinion concluded that potential challenges to the funding arrangement might arise under subchapter 17 of the "General Accounting and Budgetary Procedures Act" (A.C.A. §19-4-1701—1715), under the "Regular Salary Procedures and Restrictions Act" (A.C.A. 19-4-1601), and under Art. 16, § 4 of the Arkansas Constitution. The opinion also notes the possibility of a taxpayers' remedy under Arkansas Constitution, art. 16, §13.
The relevant law on the subject has not changed since the issuance of Opinion 90-050, except in one respect. Act 1221 of 1991 amended A.C.A. § 19-4-1701(2) (the definition of a "contractor" for purposes of professional services contracts) to add a provision stating that:
 . . . nothing in [19-4-1701] shall be construed to prohibit an institution of higher education from executing a contract with a state agency under which services will be performed by employees of the institution of higher education. An employee or employees of an institution of higher education performing such services to a state agency may receive additional compensation provided:
 (A) The institution of higher education request and receives written approval from the Chief Fiscal Officer of the State as to the amount of additional compensation to be paid to any employee; and
 (B) The total salary payments received from the employee's regular salaried position and amounts received for services performed under a professional services contract shall not exceed one hundred twenty-five percent (125%) of the maximum annual salary authorized by law for the employee's position with the institution of higher education. No Director or any other department head of any agency of this state shall receive additional compensation under this section. [Emphasis added.]
The emphasized language was added as a House amendment to the original Senate Bill 692 giving rise to Act 1221 of 1991.
The 1991 act allows an employee of an institution of higher education (such as UAMS) to be a "contractor" under a professional services contract, and to receive "additional compensation" under such contract provided the Chief Fiscal Officer approves and the total compensation received does not exceed 125% of the line-item maximum for the position at the institution of higher education. The amendment to the 1991 bill, however, states that "[n]o Director or any other department head . . . shall receive any additional compensation under this section."
Dr. Elders, of course, is the Director of an agency of this state, and as such is prohibited from receiving additional compensation under A.C.A. 19-4-1701. The question of whether she in fact receives "additional compensation" by virtue of this contract, under her particular compensation arrangement, is, as it was in Opinion 90-050, a question of fact.
In any event, your question may soon be moot, as it is my understanding that the mechanism for currently funding the salary of the Director of the Department of Health will not be in place after July 1, 1993. The biennial appropriation for the salary of the Director of the Department of Health increases effective July 1, 1993 to $123,876 per year from the 1992-93 appropriation of $84,273. See Acts 1993, No. 1173 and Acts 1991, No. 1181.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
Enclosure